### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

DAVID MINOR,

      Petitioner,

      v.

BEVERLY HASTINGS, et al.,

      Respondents.

Civil Action No. 13-0558 (JBS)

**OPINION**

**APPEARANCES:**

    DAVID MINOR, #811681B
    East Jersey State Prison
    Lock Bag R
    Rahway, NJ 07065
       *Petitioner Pro Se*

    ESSEX COUNTY PROSECUTOR
      by:  Maria Ines Guerrero, Esq.
    50 West Market Street
    Newark, NJ 07102
       *Attorneys for Respondents*

**SIMANDLE, Chief Judge**[1]

David Minor filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 challenging a judgment of conviction filed in the Superior Court of New Jersey, Law Division, Essex County, on January 30, 2004, and amended on March 22, 2004, and December 5, 2008, after a jury found him guilty of first-degree

---

[1] This case was reassigned to the undersigned following the death of the Hon. Dickinson R. Debevoise in August, 2015.

robbery, third-degree unlawful possession of a weapon, and second-degree possession of a weapon for an unlawful purpose. The State filed an Answer with the record and Minor filed a Reply.  After carefully reviewing the state court record and the arguments of the parties, this Court will dismiss the Petition with prejudice and deny a certificate of appealability.

## I.  BACKGROUND

A.  The Crime

   Minor challenges a sentence of 19 years in prison with an 85% period of parole ineligibility, to run consecutively to the sentences imposed on five other New Jersey indictments, after a jury convicted him of first-degree robbery, third-degree unlawful possession of a weapon, and second-degree possession of a weapon for an unlawful purpose.  (ECF No. 10-2 at 2.)  Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), state court factual findings are presumed correct unless rebutted by clear and convincing evidence.  See 28 U.S.C. § 2254(e)(1).  As Minor has not attempted to rebut the factual findings of the New Jersey courts, this Court will rely on those findings.

2

The Appellate Division found the following facts on direct appeal.  See State v. Minor, 2008 WL 4377436 (N.J. Super. Ct., App. Div., Sept. 29, 2008).  On January 11, 2002, at about 8:00 p.m., Lidwyn Cummings felt a handgun pressed to his side as he put the key into his truck door after exiting a drug store in Newark.  The man threatened to shoot unless Cummings gave him money.  Cummings gave the man $20 and a pack of cigarettes, the man asked for his wallet and keys, and Cummings handed them over.  The man took money from the wallet, threw the keys in a lot across the street, and headed away on foot.   Cummings picked up his keys, drove to the police station, and reported the crime, describing the perpetrator as 5'8" in height, 150 pounds, between the ages of 23 and 25, and wearing a black hooded sweater, gray pants and a cap.  On January 16, 2002, Cummings identified Minor from a six-photo array which included persons who looked similar to the description given by Cummings. At trial, Cummings identified Minor in court, stating that he was 80% certain that Minor was the person who had robbed him and that he was 95%-100% sure when he had selected Minor's photo in the pretrial photo array.

3

B.   <u>The State Court Proceedings</u>

The trial took place on April 9 and 10, 2003.  The jury convicted Minor.  On January 30, 2004, the trial judge sentenced him to 20 years, with a 17-year period of parole ineligibility. (ECF No. 7-2 at 2.)  On March 22, 2004, the trial judge entered an amended judgment which also imposed a 20-year term, with 17 years of parole ineligibility.  (ECF No. 8-2 at 2.)  Minor appealed, and on September 29, 2008, the Appellate Division of the Superior Court of New Jersey affirmed the convictions and remanded for resentencing.  <u>See</u> <u>State v. Minor</u>, 2008 WL 4377436 (N.J. Super. Ct., App. Div., Sept. 29, 2008).  The New Jersey Supreme Court denied certification on November 19, 2008.  <u>See</u> <u>State v. Minor</u>, 197 N.J. 16 (2008) (table).  On December 5, 2008, the trial judge resentenced Minor to a 19-year term of imprisonment, with an 85% period of parole ineligibility.  (ECF No. 10-2 at 2.)

Minor filed a petition for post-conviction relief in the trial court on December 16, 2008.  (ECF No. 10-2 at 2.)  On December 16, 2009, the trial judge denied the petition for post-conviction relief without an evidentiary hearing for the reasons set forth orally on the record.  (ECF No. 11-3 at 2.)  Minor

appealed, and on November 20, 2012, the Appellate Division affirmed.  See State v. Minor, 2012 WL 5845637 (N.J. Super. Ct., App. Div., Nov. 20, 2012).  The New Jersey Supreme Court denied certification on July 12, 2013.  See State v. Minor, 214 N.J. 175 (2013) (table).

C.   Procedural History of § 2254 Petition

On January 25, 2013, Minor signed his § 2254 Petition and presumably handed it to  prison officials for mailing to the Clerk.  (ECF No. 1 at 15.)  The Petition raises the following three grounds:[2]

> Ground One:  FAILURE TO CONDUCT GILMORE HEARING.  THE
> TRIAL COURT MADE A DECISION THAT THE PROSECUTOR DID
> NOT USE HER CHALLENGES UNCONSTITUTIONAL[LY] WITHOUT
> EVEN ASKING [] HER TO EXPLAIN.

---

[2] The Court notified Minor of his right to amend the Petition to include all available federal claims in accordance with Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000), and he declined to do so. (ECF Nos. 2, 5.)  The § 2254 Petition sets forth a fourth ground claiming that the judge improperly allowed a juror who was not a resident of Essex County to serve, but also stated, "So please disregard this issue.  I won't be raising it."  (ECF No. 1 at 10.)  In the Mason Order the Court indicated that this ground would be considered to be withdrawn unless Minor responded that he wanted the Court to entertain the fourth ground and/or seek a stay in order to exhaust the fourth ground.  In response, Minor indicated that he elected to have the Court entertain the three grounds and that he did not want to seek a stay.  (ECF No. 5.)

Ground Two:  PROSECUTOR['S] MISSTATEMENT OF LAW.   IN
HER SUMMATIONS SHE TOLD THE JURY THAT 85 PERCENT WAS
BEYOND A REASONABLE DOUBT. THIS WAS AFTER THE JUDGE
HAD ALREADY TOLD HER THAT THIS STATEMENT WAS UNTRUE.

Ground Three:  FAILURE TO CONDUCT WADE [HEARING.]  NEW
JERSEY ATTORNEY GENERAL GUIDELINES RECOMMEND THAT THE
INVESTIGATING OFFICER NOT BE INVOLVED IN THE
IDENTIFICATION. IN MY CASE THE SAME OFFICER THAT WAS
INVESTIGATING THE CRIME SHOWED THE VICTIM THE LINEUP.
NEWARK POLICE DEPARTMENT HAS OVER 1000 OFFICERS.
SOMEONE ELSE COULD HAVE CLEARLY CONDUCTED THE PHOTO
ARRAY.

(ECF No 1 at 5, 7, 8.)

The State filed an Answer and the record, and Minor filed a

Reply.  (ECF Nos. 27, 33.)

## II.  STANDARD OF REVIEW FOR RELIEF UNDER § 2254

Section 2254 of title 28 of the United States Code sets

limits on the power of a federal court to grant a habeas

petition to a state prisoner.  See Cullen v. Pinholster, 131

S.Ct. 1388, 1398 (2011).  Section 2254(a) permits a court to

entertain only claims alleging that a person is in state custody

"in violation of the Constitution or laws or treaties of the

United States."  28 U.S.C. § 2254(a).  Where a state court

adjudicated petitioner's federal claim on the merits,[3] as in this

---

[3] "For the purposes of Section 2254(d), a claim has been
'adjudicated on the merits in State court proceedings' when a

case, a court "has no authority to issue the writ of habeas corpus unless the [state c]ourt's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States', or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  Parker v. Matthews, 132 S.Ct. 2148, 2151 (2012) (quoting 28 U.S.C. § 2254(d)).  "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong."  Woods v. Donald, 135 S.Ct. 1372, 1376 (2015).  The petitioner carries the burden of proof, and review under § 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits.  See Pinholster, 131 S.Ct. at 1398.

---

state court has made a decision that 1) finally resolves the claim, and 2) resolves th[at] claim on the basis of its substance, rather than on a procedural, or other, ground."  Shotts v. Wetzel, 724 F.3d 364, 375 (3d Cir. 2013) (citation and internal quotation marks omitted).

A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court.  See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004). "[C]learly established law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of t[he Supreme Court's] decisions," as of the time of the relevant state-court decision.  Woods, 135 S.Ct. at 1376 (quoting White v. Woodall, 134 S.Ct. 1697, 1702 (2014), and Williams v. Taylor, 529 U.S. 362, 412 (2000)).  A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1) if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." Williams, 529 U.S. at 405-06.  Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id., 529 U.S. at 413.

8

Where a petitioner seeks habeas relief pursuant to § 2254(d)(2) on the basis of an erroneous factual determination of the state court, two provisions of the AEDPA necessarily apply. First, the AEDPA provides that "a determination of a factual issue made by a State court shall be presumed to be correct [and] [t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 29 U.S.C. § 2254(e)(1); see Miller-El v. Dretke, 545 U.S. 231, 240 (2005).  Second, the AEDPA precludes habeas relief unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).

### III.  DISCUSSION

A.  Failure to Conduct Gilmore Hearing

Minor argues, as he did on direct appeal, that the failure to conduct a hearing pursuant to State v. Gilmore, 103 N.J. 508 (1986), deprived him of due process and a fair trial by an impartial jury guaranteed by the Fourteenth Amendment of the United States Constitution.  He asserts that he is African-American and on the first day of jury selection he challenged

9

the State's use of its first five peremptory challenges against
five women, four of whom were African-American.  Relying on
Batson v. Kentucky, 476 U.S. 79 (1986), J.E.B. v. Alabama, 511
U.S. 127 (1994), State v. Gilmore, 103 N.J. 508 (1986), and
State v. Fuller, 182 N.J. 174 (2004), Minor argued on direct
appeal that the trial judge improperly found that Minor had not
made a prima facie case and, accordingly, failed to require the
State to provide reasons for its use of challenges.

The issue here is whether the Appellate Division's
determination that Minor failed to establish a prima facie
Batson claim was an unreasonable application of Batson or other
Supreme Court holdings.  The Equal Protection Clause of the
Fourteenth Amendment prohibits a prosecutor from using a
peremptory challenge to strike a prospective juror solely on
account of race.  See Batson, 476 U.S. at 88.

In Batson, the Supreme Court set forth the evidentiary
burden placed on a criminal defendant who claims that he has
been denied equal protection through the State's use of a
peremptory challenge to exclude a person from the petit jury on
account of race or ethnicity.  James Batson was a Black man who
was tried in Kentucky on charges of second-degree burglary and

10

receipt of stolen goods.  After the prosecutor had used his peremptory challenges to strike all four Black persons from the petit jury and a jury composed only of White persons was selected, defense counsel moved to discharge the jury on the ground that the prosecutor's removal of the black people from the jury violated Batson's rights; defense counsel requested a hearing on the motion, but the judge denied the motion without further inquiry.  After the Supreme Court of Kentucky had affirmed, the United States Supreme Court granted certiorari and reversed.  Batson set forth the standard for establishing a prima facie case of purposeful discrimination:

> [A] defendant may establish a prima facie case of
> purposeful discrimination in selection of the petit
> jury solely on evidence concerning the prosecutor's
> exercise of peremptory challenges at the defendant's
> trial.  To establish such a case, the defendant first
> must show that he is a member of a cognizable racial
> group, and that the prosecutor has exercised
> peremptory challenges to remove from the venire
> members of the defendant's race.  Second, the
> defendant is entitled to rely on the fact, as to which
> there can be no dispute, that peremptory challenges
> constitute a jury selection practice that permits
> those to discriminate who are of a mind to
> discriminate.  Finally, the defendant must show that
> these facts and any other relevant circumstances raise
> an inference that the prosecutor used that practice to
> exclude the veniremen from the petit jury on account
> of their race.  This combination of factors in the
> empaneling of the petit jury . . . raises the
> necessary inference of purposeful discrimination.

11

> In deciding whether the defendant has made the
> requisite showing, the trial court should consider all
> relevant circumstances.  For example, a "pattern" of
> strikes against black jurors included in the
> particular venire might give rise to an inference of
> discrimination.  Similarly, the prosecutor's questions
> and statements during voir dire examination and in
> exercising his challenges may support or refute an
> inference of discriminatory purpose.  These examples
> are merely illustrative.

Batson, 476 U.S. at 96-97 (citations, internal quotation marks

and footnotes omitted).

The Batson Court further held that, once a defendant makes

a prima facie showing, "the burden shifts to the State to come

forward with a neutral explanation for challenging black jurors

. . . .  The prosecutor therefore must articulate a neutral

explanation related to the particular case to be tried.  The

trial court then will have the duty to determine if the

defendant has established purposeful discrimination."  Batson,

476 U.S. at 97-98 (citations, internal quotation marks and

footnotes omitted).

In Johnson v. California, 545 U.S. 162, 169-70 (2005), the

Supreme Court emphasized that "Batson held that because the

petitioner had timely objected to the prosecutor's decision to

strike 'all black persons on the venire,' the trial court was in

12

error when it 'flatly rejected the objection without requiring the prosecutor to give an explanation for his action.'" (quoting Batson, 476 U.S. at 100). In Johnson, Johnson, a black male, was convicted of second-degree murder and assault on a White 19-month old child. After several jurors were removed for cause and 43 eligible jurors remained, the prosecutor exercised his three remaining peremptory challenges against the three remaining Black jurors. Defense counsel objected. The trial judge found that Johnson had not established a prima facie case because "there's not been shown a *strong likelihood* that the exercise of the peremptory challenges were based upon a group rather than an individual basis." Johnson, 545 U.S. at 165 (internal quotation marks omitted) (emphasis in original). Although the California Court of Appeal ruled that the trial judge had erred by requiring Johnson to establish a strong likelihood, the California Supreme Court reinstated the conviction, finding that the terms "strong likelihood" and "reasonable inference" were the same standard.

The Supreme Court reversed, holding that "a defendant satisfies the requirements of Batson's first step by producing evidence sufficient to permit the trial judge to draw an

13

inference that discrimination has occurred." <u>Johnson</u>, 545 U.S. at 170.  The Court emphasized that "the first two <u>Batson</u> steps govern the production of evidence," <u>id.</u> at 171, and only at the third step, after hearing the prosecutor's explanation, does the judge determine "whether it was more likely than not that the challenge was improperly motivated." <u>Id.</u> at 170.

The record in this case shows that jury selection occurred on April 8 and 9, 2003.  On the first day, defense counsel moved the court to require the prosecutor to provide race neutral reasons for using four peremptory challenges against four Black female prospective jurors.  (ECF No. 13-5 at 82.)   The trial judge found that, at that point, the prosecutor had used five challenges, one against a White female and four against Black females.  (ECF No. 13-5 at 83.)  Then the following colloquy occurred:

> The Court:  My next question to you, Ms. SanFilippo, is – I would have to find that there is a substantial likelihood that the peremptory challenges leading to the exclusion were based on assumptions about group bias as opposed to any indication of situation specific bias.  Now it is here that I would like to know what you recall that would – what would your answer to that question be?  Or put it more specifically, upon what should I – what can I base a conclusion that there is a substantial likelihood the peremptory challenges were based on assumptions about group bias?

14

Ms. SanFilippo:  Your Honor – I would submit that the assumption of the , um, the bias would be that people who share the same race as the defendant in this case, the defendant being black and the, um, 80 percent of the challenged jurors being black, that they would somehow be sympathetic or more favorable to an outcome in favor of the defendant by virtue of them having the same race.  And again nearly 80 percent – 80 percent were black as the defendant.

The Court:  Well, then what of your argument about the female?  You said two cognizable groups.

Ms. SanFilippo:  Um – just that they possibly would be more sympathetic, I think it's – with respect to the bias would go more towards the race than the gender.

                *           *           *           *

The Court:  In making my decision, is it of any relevance to the decision I have to make as to what gender or race or both the victim of this alleged crime is?

Ms. SanFilippo:  Your Honor, I think that can be a factor but at this juncture, -- that hasn't been discussed with the jurors to any extent.  Um – and I think I would base may arguments on – more so on the gender of – strike that, on the race of the defendant as opposed to the victim.

The Court:  So your answer to my very direct question is that the race of the alleged victim is immaterial to any decision I have to make in this regard?

Ms. SanFilippo:  I wouldn't say it's immaterial . . .

The Court:  Then to the extent it is material, to what – what is the race of the victim?

Ms. SanFilippo:  I believe the victim is African American as well.

The Court:  Okay.  And to what extent, if any, should – should that factor enter into my decision that I have to make?  That the . . . defendant is a black male and the alleged victim is a black male also, correct?

Prosecutor:  Yes, Your Honor, he is.

Ms. San Filippo:  I would – not very significant, Your Honor . . .  I think we need to focus on what my – the – uh – the race of my client and appropriately he is in court right now.  And I think that is more apparent.

The Court:  Ms. SanFilippo, is the only thing the challenged jurors had in common was that they belonged to the group of – cognizable group of let's say, black people or black women – besides for juror number one?

Ms. SanFilippo:  Um – Your Honor that is primarily – they do – I had not noticed a specific trend with respect to employment . . .  But I believe, again, that the motivation here deals primarily with them having a – being of the same racial group as the defendant.

(ECF No. 13-5 at 83-87.)

The prosecutor argued:  "I just don't think enough challenges have been even exercised at that point – at this point to even show a pattern that race is the cri—the basis for the exclusions . . .  So I don't believe any showing has been made, Your Honor, at this point for the State to be required to give reasons for their exclusion – for its exclusions."  (ECF

16

No. 13-5 at 88-89.)  The trial judge found that the defense had

not made a prima facie showing:

> The Court:  Okay.  I think a close examination of the
> record would bear out what the prosecutor just said.
> I would – I would say the state of the law is that
> race is a cognizable class, and so is gender.  I do
> believe.  At any rate, I'm also taking into account
> that the victim is a – is also black, to the extent
> it's material.  At any rate, I do not believe that the
> defense has made a prima facie case.  I'll deny the
> motion.

(ECF No. 13-5 at 89-90.)

This Court notes that the defense did not renew its motion,

even though jury selection went into the next day and the State

ultimately used all of its peremptory challenges.  However, the

next day, the prosecution moved twice for the defense to show

non-racial reasons for using peremptory challenges against White

prospective jurors.  At the time the State made the first

motion, the defense had used five challenges, three against

White persons and two against Black females.  Noting these

facts, the trial judge denied the motion.  (ECF No. 14-1 at 6.)

Later, the State made a second motion based on the exclusion of

potential White jurors at the point when the defense had used 16

challenges, with 13 against White persons and three against

African American jurors, and the State had no challenges left.

17

(ECF no. 14-1 at 74-82.)  The trial judge required defense counsel to justify the 13 challenges and defense counsel set forth in detail her rationale for using each of the 16 peremptory challenges.  The State argued that the reasons were pretextual and that, at that point, "the majority of the individuals on the jury are African American." (ECF No. 14-1 at 81.)  The trial judge found that the  defense had presented "genuine and reasonable grounds for believing the potential jurors might have situation[] specific biases.  Motion denied." (ECF No. 14-1 at 82.)  Then, when the defense used the next challenge against a prospective male juror named Ortiz, the State moved again arguing that the defense had challenged another White male.  (ECF No. 14-1 at 85.)  The trial judge denied the State's Gilmore motion.

On direct appeal, Minor argued that the trial court violated his equal protection rights by failing to require the State to give reasons to justify its initial five challenges where four of those challenged were African American females and the prosecutor ultimately excused a total of 10 women.  (ECF No. 8-4 at 13-19.)  In considering this claim, the Appellate Division noted that under the law in effect at the time of

18

Minor's trial, i.e., Gilmore, a prima facie showing required the movant to show that there was a "'substantial likelihood' that the peremptory challenges made by the prosecution were based on an assumption about group bias as opposed to situation-specific bias."  State v. Minor, 2008 WL 4377436 at *3.  The Appellate Division acknowledged that the Supreme Court had rejected a "more likely than not" standard in Johnson v. California, 545 U.S. 162 (2005), and held that a movant "is only required to produce evidence 'sufficient to permit the trial judge to draw an inference that discrimination has occurred.'"  Citing Snyder v. Louisiana, 552 U.S. 472, 477 (2008), the Appellate Division deferred to the trial court:  "This deference is in large part attributable to the fact that the trial judge is able to make first-hand observations of the demeanor of the attorney exercising the challenge and the juror in question."  State v. Minor at *5.  The Appellate Division affirmed on this issue finding that, even under the new, lower standard, Minor had not produced evidence sufficient to permit the judge to draw an inference of discrimination against African Americans:

> There was no proof by the defense of an unfair or unreasonable under-representation of African-Americans or women. **Indeed, the record discloses that the majority of jurors who heard the case were African-**

> **Americans.** We have stated that the ultimate
> composition of the jury [ ] is relevant to the
> determination of whether the prosecutor's intent was
> discriminatory . . . **[T]he presence on the jury of a
> substantial number of the group alleged to have been
> discriminatorily excluded may support a finding that a
> questionable proffered reason for challenging a member
> of that group was not reflective of a discriminatory
> intent.** In this instance, the defense did not make a
> prima facie showing that the jury was not drawn from a
> representative cross-section of the community.
> Accordingly, we reject defendant's argument.

State v. Minor, 2008 WL 4377436 at *5 (citations and internal

quotation marks omitted) (emphasis added).

This Court is required to presume the correctness of the

Appellate Division's finding that the majority of jurors in

Minor's trial were African-American, as Minor has not rebutted

the presumption by clear and convincing evidence and he has not

shown that this determination was unreasonable in light of the

evidence presented. See 28 U.S.C. § 2254(d)(2) and (e)(1);

Miller-El v. Dretke, 545 U.S. 231, 240 (2005) (applying

presumption of correctness under § 2254(e)(1) to state court's

factual findings regarding Batson claim).

The Supreme Court has repeatedly emphasized that a state

court's finding regarding a prosecutor's discriminatory intent

under Batson must be accorded significant deference in a habeas

case. See, e.g., Miller-El v. Cockrell, 537 U.S. 322, 339

20

(2003)("Deference is necessary because a reviewing court, which analyzes only the transcripts from *voir dire*, is not as well positioned as the trial court is to make credibility determinations.")  Thus, the Appellate Division's decision to defer to the trial judge's judgment that Minor had not established a prima facie case is consistent with Supreme Court precedent.  Moreover, like the Appellate Division, the Supreme Court has concluded that it is proper to consider the ultimate composition of the jury in determining whether the defendant has established a prima facie case under Batson.  See Miller-El v. Cockrell, 537 U.S. at 322 ("In this case, the statistical evidence alone raises some debate as to whether the prosecution acted with a race-based reason when striking prospective jurors. The prosecutors used their peremptory strikes to exclude 91% of the eligible African-American venire members, and only one served on petitioner's jury.  In total, 10 of the prosecutors' 14 peremptory strikes were used against African-Americans. Happenstance is unlikely to produce this disparity.").

Minor has cited no Supreme Court holding that is inconsistent with the Appellate Division's determination that Minor failed to produce evidence supporting an inference of

discriminatory intent by the prosecutor's use of four peremptory challenges against African-Americans where the ultimate jury was composed of a majority of African-Americans.  This Court holds that the Appellate Division did not unreasonably apply Batson or other Supreme Court holdings when it found, based upon the trial court findings and without conducting an evidentiary hearing, that Minor failed to establish a prima face case under Batson. See Johnson v. California, 545 U.S. at 169-70 ("Batson held that because the petitioner had timely objected to the prosecutor's decision to strike 'all black persons on the venire,' the trial court was in error when it 'flatly rejected the objection without requiring the prosecutor to give an explanation for his action.'") (quoting Batson, 476 U.S. at 100); Williams v. Beard, 637 F.3d 195, 214-15 (3d Cir. 2011) ("When the record does not illuminate the composition of the venire, there may be insufficient evidence with which to mount a successful collateral attack").

For all these reasons, this Court finds that the factual determinations regarding reasons for striking African-American jurors and regarding the composition of the trial jury were not unreasonable, and that the Appellate Division's determinations

22

of law were not contrary to, or an unreasonable application of,
clearly established federal law.  Minor is not entitled to
habeas relief under Ground One.

B.   Prosecutorial Misconduct

In Ground Two, Minor asserts that the prosecutor improperly
told the jury during summation "that 85 percent was beyond a
reasonable doubt . . . after the Judge had already told her that
this statement was untrue."  (ECF No. 1 at 5.)  On direct
appeal, Minor argued that the prosecutor misstated the law
regarding the burden of proof when in her closing she stated
that "80 percent is a very high percentage, ladies and
gentlemen.  That's beyond reasonable doubt.  Preponderance of an
evidence in civil cases is a little more than 50/50.  Beyond a
reasonable doubt is 80 percent, 90 percent, 100 percent.  That's
all we need.  That's sufficient."  (ECF No. 8-4 at 20.)

The Appellate Division noted that the prosecutor was
responding to the defense's comment in summation that at the
time of Cummings' photo identification, he was 95% to 100% sure
but at trial he was only 80% sure of his in-court
identification.  See Minor, 2008 WL 4377436 at *6.  The
Appellate Division found that, although the prosecutor had

23

misstated the law, this misstatement did not deny due process because the judge had instructed the jury to ignore the attorneys' statements regarding law and had given a proper burden of proof instruction:

> The comments by the prosecutor were obviously an incorrect statement of the law. However, the trial court properly instructed the jury on the meaning of reasonable doubt, and further instructed the jury to follow the instructions of the court and to ignore any statements by the attorneys on the law. Accordingly, we conclude that the erroneous statements by the prosecutor did not deprive the defendant of a fair trial.

Minor, 2008 WL 4377436 at *6.

As the Supreme Court has recently explained, "[t]he 'clearly established Federal law' relevant [to a prosecutorial misconduct claim] is [the Supreme Court's] decision in Darden v. Wainwright, 477 U.S. 168 . . . (1986), which explained that a prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Parker v. Matthews, 132 S.Ct. 2148, 2153 (2012) (quoting Darden at 181 and Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). It is not enough to show that the prosecutor's conduct was universally condemned. See Darden at 181. The quantum or

24

weight of the evidence is crucial to determining whether the prosecutor's statements before the jury were so prejudicial as to result in a denial of due process.  Id. at 182; Donnelly, 416 U.S. at 644; accord Moore v. Morton, 355 F.3d 95, 111 (3d Cir. 2001).

Given the certainty of the out-of-court identification of Minor by Cummings, as well as the correct instructions by the trial judge regarding the legal standard of proof beyond a reasonable doubt, the Appellate Division was not unreasonable in its application of Darden, Donnelly or other Supreme Court precedent when it concluded that the prosecutor's comments did not so infect the trial with unfairness as to make Minor's conviction a denial of due process.  Minor is not entitled to habeas relief on Ground Two.

C.  Failure to Conduct Wade Hearing

In Ground Three, Minor asserts that he was entitled to an evidentiary hearing under United States v. Wade, 388 U.S. 218 (1967), on the admissibility of the out-of-court identification because the investigating police officer conducted the photo array with Cummings, contrary to the New Jersey Attorney General's guidelines.

The Supreme Court considered the claim that a defendant's pretrial identification by means of photographs was so unnecessarily suggestive and conductive to misidentification as to deny him due process in Simmons v. United States, 390 U.S. 377, 383 (1968).  In that case, two men robbed a bank.  The next day, the FBI separately showed five bank employees six group photographs which included defendants Simmons and Andrews; each of the five employees identified Simmons but not Andrews.  The government relied on the in-court identification of Simmons but did not introduce the photographs or the pretrial identifications.  The Supreme Court held "that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."  Id. at 384. Applying the standard, the Court concluded that the pretrial identification procedure used by the FBI did not violate due process where it was not suggested that the photo identification was unnecessary, there was "little chance that the procedure utilized led to misidentification of Simmons," and the evidence

26

did not show that the FBI agents suggested which persons in the photos were under suspicion. Id. at 385.

In Manson v. Brathwaite, 432 U.S. 98 (1977), a § 2254 petitioner challenged his Connecticut conviction for possession and sale of heroin, arguing that the admission of identification testimony of Glover, an undercover police officer, deprived him of due process. Two days after Glover purchased heroin from a Black man out of an apartment in Hartford, another police officer who suspected Brathwaite (based on Glover's description), obtained his photo from the Records Division and left the photo on Glover's desk. Glover identified the person in this photo as the person who had sold him heroin. Brathwaite challenged the identification on due process grounds in the state court and his § 2254 petition. The District Court dismissed the § 2254 petition but the Second Circuit reversed with instructions to issue the writ unless the State retried Brathwaite, finding that the examination of the single photograph was suggestive. The Supreme Court explained that "[t]he admission of evidence of a showup without more does not violate due process," id. at 106 (citation omitted), and "[t]he admission of testimony concerning a suggestive and unnecessary

27

identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability." id. The Supreme Court held that admissibility of the unnecessarily suggestive one-photo identification testimony turned on balancing "the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation," against "the corrupting effect of the suggestive identification itself." Id. at 114. Applying this test, the Court concluded that the "indicators of Glover's ability to make an accurate identification [were] hardly outweighed by the corrupting effect of the challenged identification itself[, even though] identifications arising from single-photograph displays may be viewed in general with suspicion." Id. at 116.

Most recently, in 2012 the Supreme Court granted certiorari on the New Hampshire Supreme Court's denial of Perry's motion to suppress identification testimony where the witness identified Perry at 3:00 a.m. under suggestive circumstances not arranged by law enforcement officers. See Perry v. New Hampshire, 132

28

S.Ct. 716 (2012).  From her apartment window, the witness had seen someone breaking into a car in the parking lot and had called police; the police officer who arrived in the parking lot saw and stopped Perry, who was holding two car stereo amplifiers in his hands.  While Perry was standing in the parking lot with another officer, the original officer went upstairs and asked the witness for a more specific description of the man she had seen.  The witness "pointed to her kitchen window and said the person she saw breaking into [the] car was standing in the parking lot, next to the police officer."  Id. at 722.  However, a month later, when the police showed the witness a photographic array that included a picture of Perry, she was unable to identify him.  Perry moved to suppress the one-person showup in the parking lot and the state court denied the motion on the ground that the police had not arranged the out-of-court identification.  The New Hampshire Supreme Court affirmed and the Supreme Court granted certiorari on "the question whether the Due Process Clause requires a trial judge to conduct a preliminary assessment of the reliability of an eyewitness identification made under suggestive circumstances not arranged by the police" id. at 723, answering the question in the

negative.   The Court noted that the Constitution "protects a
defendant against a conviction based on evidence of questionable
reliability, not by prohibiting introduction of the evidence,
but by affording the defendant means to persuade the jury that
the evidence should be discounted as unworthy of credit."   Id.
at 723.   As the Court explained,

> An identification infected by improper police
> influence . . . is not automatically excluded.
> Instead, the trial judge must screen the evidence for
> reliability pretrial.   If there is a very substantial
> likelihood of irreparable misidentification, the judge
> must disallow presentation of the evidence at trial.

Perry, 132 S.Ct. at 720-21.

In this case, Minor filed a pretrial motion for a Wade
hearing on the pretrial identification by Cummings.   The trial
judge heard argument on the motion and denied it without taking
testimony, finding that the photo identification procedure was
not suggestive:

> This Court finds insufficient evidence to justify
> designated – designating the photographic
> identification procedure unfair and impermissibly
> suggestive even when viewing all the evidence in the
> light most favorable to the defense.   That evidence
> includes S-1A through F.   Those are the photographs of
> the photos that were shown that particular witness,
> Mr. Cummings, including the photograph of Defendant,
> which I believe is S-1F.   In other cases, much more
> prejudicial conduct such as actually stating that the
> suspected Defendant was contained within the photo –

30

within the photo array did not justify a finding of impermissible suggestiveness.  Here, the alleged impermissible practice was simply failing to state the procedures used for the photo identification process. However, these procedures were designated in the Newark Police Department photo display instructions and there is nothing to indicate that a deviation from these procedures occurred.

In addition, after the photos were shown to Mr. Cummings, he signed a photographic identification form and Detective Chirico signed a photo display report, neither of which indicated a divergence from the procedures stated in the photo display instructions. These instructions adequately addressed Defendant's contentions regarding the procedures used during the photo identification.  Further, in terms of the photographs used, Mr. Cummings indicated on the photograph identification form that all of the pictures were pictures of the faces of "similar black males."  Likewise, the photo display report, which is attached to the State's papers which I had reviewed and I incorporate by reference into this decision, even though they have not been technically marked into evidence, that display report indicates all the subjects were roughly within six years of Defendant's age.  These documents also establish that the photo array was displayed to Mr. Cummings within five days of the incident.

In terms of Mr. Cummings' ability to – to view the perpetrator of the crime, he indicated that at the time of  his initial incident report that he saw the individual approach him and that he was able to identify the perpetrator's attire from head to toe, the color of the gun used, as well as the perpetrator's height, weight, skin, color and age. This level of detail contained in this information satisfies the Court that Mr. Cummings' attention was properly focused on the perpetrator and the five day difference between the incident and the photo array

suggests that Mr. Cummings had scant time for the
perpetrator's appearance to fade from his memory.
Therefore, although a reference to the amount of time
that Mr. Cummings viewed the perpetrator was not
provided, as suggested for an optimal identification,
this Court finds that the photo identification did not
rise to the level where an unfair procedure was
conducted.

(ECF No. 13-3 at 14-15.)

On direct appeal, Minor asserted that Detective Chirico,
who took Cummings' initial statement, also administered the
photo array in which Cummings selected Minor's photo and this
procedure was suggestive as it violated the applicable
guidelines of the New Jersey Attorney General.  Minor also
argued that the photo array was suggestive because Chirico had
targeted Minor as a suspect and "the photos all depicted
moustaches and facial hair, because David Minor had a moustache
and facial hair in the target photo, and yet the victim never
included those references in his description."  (ECF No. 8-4 at
25.)  The Appellate Division noted that "there is no automatic
right to a Wade hearing" and "[t]here must first be a showing by
the defendant of impermissible subjectiveness in the
identification procedure."  Minor, 2008 WL 4377436 at *7.  The
Appellate Division found that "the trial judge determined that
the photographic identification procedure was neither unfair nor

32

unduly suggestive" and "[h]is conclusion is buttressed by the fact that the defendant failed to pre[s]ent an adequate proffer of an impermissibly suggestive procedure." Id.

Minor has not cited Supreme Court precedent holding that a photographic identification procedure is unduly suggestive because the investigating officer conducts the photo array. See Coleman v. Alabama, 399 U.S. 1, 7 (1970) (holding that where "identifications were entirely based upon observations at the time of the [incident] and not at all induced by the conduct" of the pretrial identification procedures, the identification does not violate due process). Nor has he cited a Supreme Court case holding that the trial judge must conduct an evidentiary hearing including testimony before the judge determines that the procedure was not unnecessarily suggestive and there was no substantial likelihood of irreparable misidentification. In any event, Simmons and Brathwaite establish that even where the police use an unduly suggestive pretrial identification procedure, the identification is admissible so long as the reliability factors outweigh the corrupting effect of the suggestive procedures. The New Jersey courts' admission of the in-court identification of Minor was not contrary to, or an

33

unreasonable application of Supreme Court precedent.  The trial court conducted an assessment of the suggestiveness and the reliability of the identification and considered the factors which the Supreme Court requires to be considered in evaluating the likelihood of misidentification.  Because Minor has not shown that the adjudication was contrary to, or an unreasonable application of clearly established Supreme Court precedent, he is not entitled to habeas relief on Ground Three.

## IV.  Certificate of Appealability

Minor has not made a substantial showing of the denial of a constitutional right.  Therefore, no certificate of appealability will issue pursuant to 28 U.S.C. § 2253(c)(1)(B). See Fed. R. App. P. 22(b)(1); 3d Cir. L.A.R. 22.2.

## V.  CONCLUSION

This Court denies the Petition with prejudice and denies a certificate of appealability.  The accompanying Order will be entered.


                                        s/ Jerome B. Simandle
                                        JEROME B. SIMANDLE
                                          Chief Judge

Dated: March 29, 2016